### L. McKnight and Lizzie Davis *v.* The State.

1. Evidence. — It is a general rule that witnesses are to state facts only, and that the jury are to deduce therefrom the inferences or conclusions.

2. Same — Adultery. — In a trial for adultery, the court below, over the defendants' objection, allowed a witness, after his narration of circumstances in which he discovered the defendants, to state that he suspected therefrom that they had been copulating. *Held*, error to admit the witness's suspicion or inference.

3. Practice — Presumption. — In criminal cases, incompetent evidence, erroneously admitted, will rarely be presumed to have had no influence on the verdict.

4. ADULTERY — CHARGE OF THE COURT — SLAVE MARRIAGES. — In an adultery trial of a negress, formerly a slave, the court below instructed, in effect, that if she, before emancipation, was married to a certain male slave, or lived with him as his wife after the manner of slaves, and continued to live with him as his wife until her cohabitation with another man, in 1876, she is deemed to have been legally married to her first male companion. *Held*, under art. 12, sect. 27, of the Constitution of 1869, that the instruction was correct.

APPEAL from the County Court of Ellis. Tried below before the Hon. J. D. TEMPLETON, County Judge.

J. A. Cantrell, for the State, testified that, in the fall or late in the summer of 1876, about sunset, he was passing the cabin where Alexander Davis and Lizzie Davis, one of the defendants, lived, and witness stopped to inquire about some mules. The cabin door was closed. There was at the place a bad dog, and witness, hearing him growl, quickly opened the door to escape the dog, and at the same time called to Alex. Davis to keep his dog off. On opening the door, however, witness saw that Alex. Davis was not there, and that London McKnight, the other defendant, was there, lying upon a pallet upon the floor. As witness opened the door, he heard McKnight tell Lizzie to hand him a coal of fire, and she was in the act of rising and moving towards the fire. She was not quite erect, and was moving from a place near the pallet, and a step or two from McKnight's feet. Witness could not say whether she was getting up from the floor, or from a seat of some sort. From these indications, and what witness had previously heard, his mind received the impression that the defendants had been having carnal intercourse. What he saw would, of itself, he thought, have made the same impression on his mind, but what he had previously heard made the impression stronger. All this was in Ellis County.

This testimony about the witness's impressions was elicited by questions asked by counsel for the State; to which, and the testimony itself, the defence objected, and

reserved a bill of exceptions, in which the word *suspicions,* instead *impressions,* is used.

Amanda Sansom, for the State, testified that, after Alex. and Lizzie Davis had parted, in the summer or fall of 1876, Lizzie twice came to witness's house, and stayed all night. McKnight also made his appearance on both occasions, but came later than Lizzie the first night. At bedtime, witness fixed for Lizzie a bed on a lounge, and for herself a pallet on the floor, and they went to bed, leaving McKnight sitting in the door. Sometime in the night, witness awoke, and saw McKnight lying with Lizzie on the lounge, with the cover over him. They seemed asleep, but may have been awake. On the second occasion when they came, and Lizzie stayed all night, witness did not know where McKnight slept, or that he slept there at all. All this was in Ellis County.

J. B. Meredith, for the State, testified that he owned Lizzie "in slave times." She and Alex. were married in 1864, "after the manner of slaves," and they lived together as husband and wife until some time in the summer or fall of 1876, when they separated. Witness never knew or heard of any other marriage between them. They had, since their marriage, lived most of the time with witness.

Two or three other witnesses for the State testified to circumstances strongly indicative of habitual or frequent intercourse between the defendants.

For the defence, the county clerk of Ellis County proved that there was no record of any marriage between Alex. Davis and the defendant Lizzie. In 1864, witness had heard of their marriage as slaves, and had never heard of any other marriage. They had lived in the same section of country ever since, and had lived together as man and wife until a year or two before the trial, which was in August, 1878. This concluded the evidence.

The jury found the defendants guilty, and assessed against each of them a fine of $100; and, their motion for

a new trial being overruled, judgment was rendered accordingly, and they appealed.

The provision of the Constitution of 1869 cited in the opinion is as follows : —

" All persons who, at any time heretofore, lived together as husband and wife, and both of whom, by the law of bondage, were precluded from the rites of matrimony, and continued to live together until the death of one of the parties, shall be considered as having been legally married; and the issue of such cohabitation shall be deemed legitimate. And all such persons as may be now living together in such relation shall be considered as having been legally married; and the children heretofore or hereafter born of such cohabitations shall be deemed legitimate."

*A. A. Kemble*, and *E. P. Anderson & Brother*, for the appellants. The second assignment of error raises the question of the legal marriage of the defendant Lizzie Davis to Alex. Davis.

It will be seen that they were married in slave times, after the manner of slave-marriages. This is the only marriage. The Constitution of 1869 undertakes to *adopt* this slave-marriage for them, and make it binding upon them *eo instanti*, and for all time, if they were living together at the time of making that Constitution. The second section of the sentence reads : " And all such persons as may be now living together in such relation shall be considered as having been legally married."

It is respectfully submitted that the Convention had no such power. The law is retroactive. As well might the Convention have said that all white men who are now keeping a mistress shall be considered as married to her. No doubt, legislative or constitutional provision could legitimate the children ; that interferes with nobody. But to declare that, because of certain past acts, which were not criminal, a party shall be considered married, or shall be barred from

marriage, or his acts, not otherwise criminal, shall be deemed so, does seem to be beyond the power of even a constitutional convention.

*Thomas Ball*, Assistant Attorney-General, for the State.

Ector, P. J.   London McKnight and Lizzie Davis were convicted under an indictment charging them with living together in a state of adultery.   The charging part of the indictment is as follows : " That one London McKnight and one Lizzie Davis, late of said county, in the county of Ellis, in said State, on the fifteenth day of March, in the year of our Lord one thousand eight hundred and seventy-seven, with force and arms, unlawfully did then and there live together in a state of adultery, she, the said Lizzie Davis, being then and there legally and lawfully the wife of one Alex. Davis, and was then and there legally married to the said Alex. Davis ; and the said Lizzie and the said London did then and there cohabit together, and live together in a state of adultery and cohabitation, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State."

The first error assigned relates to the admission of certain evidence, over the exceptions of defendants.   On the trial of this cause, the State's witness Cantrell testified to seeing the defendants in the cabin together, alone, between sundown and dark, McKnight lying on a pallet on the floor, and Lizzie rising up and moving from near the pallet towards the fireplace, when witness opened the door.   He could not say whether she was getting up from the floor or from a seat of some sort.   Witness was then asked by the State's counsel if the conduct or the situation of the defendants caused him to suspect them of carnal intimacy ; and the defendant objected to the testimony thus sought, because the State has no right to put in evidence the conclusions,

inferences, or suspicions of the witness. The objection was overruled by the court, and the witness answered that the conduct did cause him to suspicion them of carnal intercourse ; that the conduct alone would have caused such suspicions, but that the suspicion was made stronger by what he had heard of before that ; and to the ruling of the court in admitting this testimony the defendant excepted.

It is a general rule of law that witnesses must only state facts, and that the jury are to draw the inferences and conclusions from the facts given in evidence. We believe that the court erred in allowing the witness Cantrell to state what impressions were made upon his mind by the conduct of the defendants. A judgment, even in a criminal case, will not be reversed for immaterial errors. In such cases, however, courts will rarely presume that the particular evidence which had been wrongfully admitted could have no influence on the deliberations of the jury. Whart. Cr. Law, sect. 3090, and authorities there cited.

The court did not err, in its charge to the jury, in telling them, if they " found from the evidence that the defendant Lizzie Davis was married to Alex. Davis, or lived with Alex. Davis as his wife, after the manner of slaves, and that she lived with Alex. Davis, as his wife, from 1864 to the 15th of August, A. D. 1870, and was living with said Alex. Davis, as his wife, at the time the offence is charged in said indictment, they are deemed to be, to all intents and purposes, in law, legally married." Const. 1869, art. 12, sect. 27 (2 Pasc. Dig.).

We deem it unnecessary to notice the other portions of the charge of the court which are excepted to by the defendants, further than to say that, while it is clear to our minds the statute under which the defendants were indicted does not intend to punish a single or occasional act of criminal intercourse, but only those " who shall live together in adultery," we think the charge, taken as a

whole, correctly stated the law of the case on this point. *Parks* v. *The State*, 4 Texas Ct. App. 134; *Morrill* v. *The State*, 5 Texas Ct. App. 447.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*